**Antonio HEREDIA, Plaintiff,**

v.

**UNITED STATES of America and Juan Velasco, Defendants.**

**No. 94 CIV. 3179 (MGC).**

United States District Court, S.D. New York.

May 31, 1995.

George Zelma, New York City, for plaintiff.

Mary Jo White, U.S. Atty., S.D.N.Y. by Gideon Schor, Asst. U.S. Atty., New York City, for defendant U.S.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

This is an action brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., for injuries suffered by plaintiff in an automobile accident. The United States moves to dismiss the amended complaint for failure to state a claim under the FTCA. For the reasons discussed below, defendant's motion to dismiss is granted in part and denied in part.

### Background

Plaintiff Antonio Heredia was an eighteen year-old high school student and a participant in the Marine Corps' "Delayed Entry Program." The Delayed Entry Program permits the Recruiting Service of the Marine Corps to accept applicants but delay their departure for recruit training. Participants in the program—commonly referred to as "poolees"—perform no official duties and are not entitled to pay or benefits, although as a condition of participation they must enlist in the Marine Corps Reserves. A poolee is expected to report for active duty on a certain date, but acceptance in the Marine Corps is conditioned upon a poolee's fitness and good behavior. See United States Military Personnel Procurement Manual, Enlisted Processing, Chapter 2 § 2301(1)(b) (attached as Exhibit A to Decl. of Asst. U.S. Att'y Gideon A. Schor.)

The amended complaint alleges that plaintiff and another poolee, Juan Velasco, spent August 13, 1992 working at the "request and command" of Marine Corps recruiter Sgt. Freddy A. Feliz at the Marine Corps Recruiting office at 72 Westchester Square in the Bronx. (Amend.Compl. at ¶ 16.) According to the amended complaint, Feliz instructed Velasco to assist him with recruiting activities by travelling to the Pan American Motor Inn in Queens. Feliz "expressly or impliedly" gave Velasco—who was a licensed driver—permission to use Feliz' personal automobile to perform this errand. This is alleged to be a violation of Marine Corps regulations. (Id. at ¶ 19.) It is also alleged that Feliz had previously permitted Velasco to use his automobile to run personal errands for him. (Id. at ¶¶ 20–21.) Feliz is not alleged to have instructed plaintiff to accompany Velasco to Queens, although plaintiff telephoned his mother to inform her that he would be home later than usual because he was assisting Feliz with recruiting activities. (Id. at ¶ 18.) While driving to Queens, Velasco lost control of the automobile, skidded off the road and hit a tree. Plaintiff, who was sitting in the front passenger seat, suffered massive abdominal and neurological injuries. (Id. at ¶ 24.) Plaintiff claims that the United States is liable for the negligence of Velasco, and for Feliz' allegedly negligent supervision of Velasco.

The United States moves to dismiss the amended complaint on the grounds that (1) it cannot be liable under the FTCA for the negligence of Velasco, since Velasco was not a federal employee at the time of the accident, and (2) it cannot be liable for the negligence of Feliz, because Feliz would not be liable for plaintiff's injuries under New York law. At oral argument, I dismissed Count Three of the amended complaint, which was against Feliz individually under N.Y.Veh. & Traf.Law § 388 (McKinney 1986). (Trans. of Proc., Dec. 16, 1994, at 27.)

*Discussion*

When considering a motion to dismiss the complaint for failure to state a claim, the court must presume the truth of all material facts alleged in the complaint and all inferences must be drawn in favor of the pleader. *See, e.g., Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

I. *Liability of the United States for the conduct of Velasco*

The Federal Tort Claims Act confers exclusive jurisdiction upon the federal courts for civil actions involving

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1988). Thus, plaintiff's claim against the United States for the negligence of Velasco may proceed only if Velasco was an "employee of the Government" who was acting "within the scope of his office or employment" at the time of the accident. "Employees" of the United States are defined by the FTCA as "officers or employees of any federal agency, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. The Second Circuit has stated that this language is to be construed "with an eye to general agency law rather than to the formalities of employment contracts." *Witt v. United States,* 462 F.2d 1261, 1263–64 (2d Cir.1972).

It is not alleged that Velasco was either enlisted in the Marine Corps or a government employee at the time of the accident. However, plaintiff contends that Feliz' "or-der" to Velasco to travel to Queens on his behalf created a principal-agent relationship, which in turn transformed Velasco into a federal "employee" under the FTCA pursuant to *Witt. Witt* held that a civilian employee of a private club run by a private association of military personnel on a military base was an "employee" under the FTCA. The plaintiff was a military prisoner who had "volunteered" for a prison work detail to shovel manure at the club. He was injured in an accident caused by the negligence of the civilian employee. Although there was no written agreement, the court noted that the civilian supervisor was "impliedly authorized by the Commandant of the Disciplinary Barracks to transport prisoners in his custody to a work detail ... to supervise or help supervise that detail and to return the prisoners." *Id.* at 1264. Under the circumstances, the court held that the civilian employee was acting on behalf of a federal agency without compensation and the United States could be liable for his negligence under the FTCA. *Id.* at 1264–65.

Agency is a relationship which "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *In re Shulman Transp. Enters., Inc.,* 744 F.2d 293, 295 (2d Cir.1984) (quoting Restatement (Second) of Agency § 1(1) (1957)). An essential element of an agency relationship is that the agent acts subject to the principal's direction and control. *Id.* at 295. New York courts have held that "where the circumstances alleged in the pleading 'raise the possibility of a principal-agent relationship,' and no written authority for the agency is established, questions as to the existence and scope of the agency" are issues of fact and are not properly the basis of a motion to dismiss. *Maurillo v. Park Slope U–Haul,* 194 A.D.2d 142, 147, 606 N.Y.S.2d 243, 247 (2d Dep't 1993) (quoting *Fogel v. Hertz Int'l, Ltd.,* 141 A.D.2d 375, 376, 529 N.Y.S.2d 484, 485 (1st Dep't 1988)).

In *Maurillo,* Alex Maurillo, Sr., ("Alex Sr.") asked his son, Alex Maurillo, Jr. ("Alex Jr.") to assist him in moving furniture from

the family home in Brooklyn to a summer residence. Alex Sr. told Alex Jr. to rent a moving van for this purpose, gave Alex Jr. his credit card to pay for the rental, and "pointed out several things" which he wanted transported. Alex Jr. rented the van, and with the help of several of his brothers, transported the items to the summer residence. While driving back to Brooklyn, Alex Jr. stopped the van abruptly, causing his brother Michael—who was riding in the cargo area of the van—to fall to the floor. Michael sustained severe injury to his cervical spine that rendered him a paraplegic. Michael and Alex Sr. sued Alex Jr. and several other defendants. The defendants counterclaimed seeking indemnification and/or contribution from Alex Sr. on the theory that in engaging Alex Jr. to serve as his agent, Alex Sr. was liable as a principal for Alex Jr.'s negligence. While noting the novelty of the claim—particularly because it was based on interfamilial activity—the court held that the defendant's counterclaims (except the counterclaim of Alex Jr., who was barred from seeking contribution or indemnification because he was an actively negligent tortfeasor) sufficiently alleged facts which "raised a triable issue of fact regarding agency which is sufficient to defeat the plaintiff's motion to dismiss." 194 A.D.2d at 147, 606 N.Y.S.2d at 247.

■ The amended complaint alleges that Velasco and plaintiff were in the recruiting office on the day of the accident "to carry out instructions, to perform duties and to be otherwise supervised and directed by, and to be under the supervision, control, command and auspices" of Feliz. (Amend.Compl. at ¶ 11.) Feliz "instructed" Velasco to help with recruitment at the Pan American Motor Inn in Queens, and Feliz "expressly or impliedly" gave Velasco permission to use his personal automobile. (Id. at ¶¶ 16, 17.) At the time of the accident, Velasco was driving Feliz' car with Feliz' "consent and knowledge." (Id. at ¶ 22.) These allegations raise a triable issue of fact as to whether Velasco was an agent of Feliz. Maurillo, 194 A.D.2d at 147, 606 N.Y.S.2d at 247. That issue cannot be determined on a motion to dismiss the complaint.

■ Under the doctrine of respondeat superior, a principal is liable for the tortious conduct of his agent only when the agent acts within the scope of the employment relationship. Riviello v. Waldron, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302, 391 N.E.2d 1278, 1280–81 (1979). This requirement is reflected in the FTCA, which permits liability only for conduct undertaken "within the scope of [an employee's] office or employment." 28 U.S.C. § 1346(b). Defendant contends that because the amended complaint alleges that Feliz lent his personal automobile to Velasco in violation of military regulations, the order was outside the scope of Feliz' employment as a matter of law, and thus, Velasco's conduct—pursuant to the "illegal" order—was outside the scope of his employment. The case upon which defendant relies, Harris v. United States, 718 F.2d 654 (4th Cir.1983), involved a situation in which a miliary official issued an order to a soldier to assist at an automobile accident which had occurred off-base, but did so pursuant to a "personal humanitarian impulse wholly unrelated to his official duties as an employee of the United States." Id. at 658. By contrast here, only the fact that Feliz lent his personal automobile to Velasco is alleged to violate military regulations, not the order to travel to Queens. That order, unlike the order in Harris, was clearly related to Feliz' official duties as a recruiter.

■ While not conceding that Velasco was an employee under plaintiff's agency theory, defendant contends that if Velasco is a federal employee under the FTCA, then plaintiff must also be a federal employee. In that event, plaintiff's exclusive remedy would be under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq. The FECA was designed as a federal workers compensation remedy under which federal employees are guaranteed the right to receive immediate, fixed benefits regardless of fault and without need for litigation. The quid pro quo, however, is that such employees lose the right to sue the Government. Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983); Votteler v. United States, 904 F.2d 128, 130 (2d Cir.), cert. de-

*nied,* 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990).

The FECA defines an employee as "a civil officer or employee in any branch of the Government of the United States" or

an individual rendering personal service to the United States similar to the service of a civil officer or employee of the United States, without pay or for nominal pay, when a statute authorizes the acceptance or use of the service, or authorizes payment of travel or other expenses of the individual

5 U.S.C. § 8101(1). Authority to determine the scope of coverage under the FECA is vested in the Secretary of Labor, whose decision is not reviewable. 5 U.S.C. § 8128(b). Defendant contends that there is at least a substantial question as to whether plaintiff is covered by the FECA and it suggests a stay of the proceedings to permit the Secretary to determine this issue.

However, plaintiff has alleged that Velasco was an "employee" not because he was a poolee but because a federal employee—Feliz—ordered him to travel to Queens. This order allegedly made Velasco an agent, which in turn may provide the basis for concluding that Velasco was a federal "employee" within the meaning of the FTCA. But it is not alleged that Feliz ordered plaintiff to accompany Velasco to Queens. Thus, despite the fact that plaintiff and Velasco had the same relationship to the Marine Corps, it does not necessarily follow that plaintiff was an "employee" for the purposes of either the FTCA *or* the FECA.

■ Defendant makes the further argument that this action is barred by the *Feres* doctrine. *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), held that service members of the Armed Forces cannot bring tort suits under the FTCA for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159; *see generally Taber v. Maine,* 45 F.3d 598, 606–19 (2d Cir.1995) (describing development of *Feres* doctrine). Because the amended complaint alleges that plaintiff was neither a service member nor a civilian employee of the military, the *Feres* doctrine does not

apply. *Sheridan v. United States,* 487 U.S. 392, 401, 108 S.Ct. 2449, 2455, 101 L.Ed.2d 352 (1988); *Kohn v. United States,* 680 F.2d 922, 926 (2d Cir.1982). Accordingly, defendant's motion to dismiss the amended complaint is denied insofar as it is based upon the negligence of Velasco.

## II. *Liability of the United States for the conduct of Feliz*

■ The amended complaint alleges that the United States is liable under the FTCA for Feliz' negligent supervision of plaintiff. Under New York law, liability for negligent supervision arises only where a defendant (1) has a legal duty of supervision; (2) which is breached; and (3) the breach proximately causes the plaintiff's injuries. *See Stagl v. Delta Airlines, Inc.,* 52 F.3d 463, 466–67 (2d Cir.1995) (citing *Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 392, 489 N.E.2d 1294, 1294 (1985)); *Shante D. by Ada D. v. Board of Educ.,* 190 A.D.2d 356, 361, 598 N.Y.S.2d 475, 478 (1st Dep't 1993), *aff'd,* 83 N.Y.2d 948, 615 N.Y.S.2d 317, 638 N.E.2d 962 (1994). The negligence of Feliz alleged in the amended complaint is the lending of his personal automobile to Velasco. Plaintiff contends that Feliz' negligence was the proximate cause of his injuries because Feliz' conduct in lending Velasco his personal automobile violated Marine Corps regulations. Neither side has identified exactly which regulation Feliz' conduct allegedly breached. Nevertheless, even if Feliz breached a regulation, violation of a rule or regulation by an alleged tortfeasor is actionable only if the breach was a proximate rather than a "but for" cause of plaintiff's injury. As the New York Court of Appeals has held, "proximate cause is no less essential an element of liability because the negligence charged is premised in part or in whole on a claim that a statute or ordinance ... has been violated." *Sheehan v. City of New York,* 40 N.Y.2d 496, 501, 387 N.Y.S.2d 92, 95, 354 N.E.2d 832, 834 (1976). In *Sheehan,* a bus stopped in a traffic lane rather than by the curb—in violation of regulations—to let passengers on and off. The bus was rear-ended by a sanitation truck, and an injured passenger sued. The Court of Ap-

peals held that as a matter of law, the violation of the regulation could not be considered the proximate cause of the plaintiff's injuries, since the "continued presence of the bus in the traveling lane at the time it was struck merely furnished the condition or occasion for the occurrence of the event rather than one of its causes." 40 N.Y.2d at 503, 387 N.Y.S.2d at 96, 354 N.E.2d at 835 (citations omitted). *See also Taylor v. Botnick Motor Corp.*, 146 A.D.2d 81, 84, 539 N.Y.S.2d 141, 143 (3d Dep't 1989) (car salesperson who knowingly registered car without liability insurance—in violation of New York law—not liable for injuries sustained by plaintiff involved in a collision with the car).

Plaintiff relies upon *Doggett v. United States*, 875 F.2d 684 (9th Cir.1988) and *Johnson v. United States*, 496 F.Supp. 597 (D.Mont.1980), *aff'd*, 704 F.2d 1431 (9th Cir. 1983), for the proposition that violation of a military regulation may establish proximate cause. *Doggett* involved a military regulation requiring the detention of intoxicated personnel, the breach of which was the alleged cause of the automobile accident in which the plaintiff was injured. Noting that the duty to detain was mandatory, rather than permissive, the court applied California law to hold that "when performance of a mandatory duty would have altered the course of events, the breach of duty may be a proximate cause of injury" and held that this issue was properly submitted to the trier of fact. 875 F.2d at 692–93. In *Johnson*, a bartender at a Non–Commissioned Officers Club permitted the tortfeasors to hold an "after hours" party at the Club at which alcohol was served in violation of Air Force regulations. After attending the party, the tortfeasors were involved in an automobile accident. The court permitted the United States to be liable for the conduct of the bartenders, holding that "[t]he negligence of Air Force personnel in violating the statutes and government rules with respect to permitting alcohol to be delivered or given away to an intoxicated person after the legal closing time for a retail liquor establishment was in this case a proximate rather than a remote cause of the plaintiff's injury." 496 F.Supp. at 603.

In both cases, however, the danger created by the breach of the regulation—failing to detain intoxicated drivers or permitting an intoxicated person to continue to consume alcohol—made the injuries foreseeable, because the regulations were intended to protect against the kind of harm which actually occurred. *See Doggett*, 875 F.2d at 692 (regulation intended to protect against kind of risk of injury suffered by plaintiff); *Johnson*, 496 F.Supp. at 603 (statute and regulation designed "to promote public health, welfare and safety"). Plaintiff has not alleged that the regulation referred to in the amended complaint was designed to protect passengers from negligent drivers or that violation of the regulation made it foreseeable that Velasco, a licensed driver, would operate the automobile negligently.

As with *Sheehan*, Feliz' alleged violation of the regulation merely furnished the condition or occasion of the event—the "but for" cause—but plaintiff has not alleged any facts to suggest that the violation was a proximate cause of the accident here. Accordingly, plaintiff's claim against the United States based on Feliz' conduct fails to allege any facts showing that plaintiff's injury was proximately caused by Feliz' alleged negligence. Without this essential element of proximate cause, plaintiff does not state an actionable claim of negligence under the law of New York.

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss the amended complaint is denied as to Velasco's conduct and granted as to Feliz' conduct.

SO ORDERED.